817 So.2d 202 (2002)
STATE of Louisiana
v.
Wanda SCHULTZ.
No. 01-KA-995.
Court of Appeal of Louisiana, Fifth Circuit.
April 10, 2002.
Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Kenny Bordelon, Douglas W. Freese, Assistant District Attorneys, Gretna, LA, for State.
Andre Renee Jacques, and William R. Campbell, Jr., New Orleans, LA, for appellant.
Court composed of Judges EDWARD A. DUFRESNE, JR., SUSAN M. CHEHARDY and CLARENCE E. McMANUS.
McMANUS, Judge.
Defendant, Mrs. Wanda Schultz, was charged with three counts of cruelty to a juvenile. After a judge trial, she was convicted of one count. Defendant filed a *203 motion for new trial, or in the alternative for post-verdict judgment of acquittal. The trial judge denied the motion and sentenced her to two years of imprisonment at hard labor, suspended the sentence and placed her on active probation for two years with special conditions of probation. Thereafter, defendant filed a timely motion for appeal, which the trial judge granted. For the following reasons, we reverse her conviction and sentence.

FACTS
This cruelty to a juvenile conviction arose out of an incident that occurred on the night of February 25, 2000 when defendant entered her fifteen-year-old daughter Greta's bedroom to tell her to lower the volume of her music. Thereafter, the version of the events that transpired varied with the witnesses. According to Greta Schultz, her mother left the bedroom and then returned a second time, when she sprayed Greta with pepper spray and also sprayed Greta's younger siblings, Alex and Bridgette. Mrs. Schultz, on the other hand, contended that she acted in self-defense that night. After the incident, Alex Schultz called the police. Mrs. Schultz was arrested. Once the police were called, Mrs. Schultz telephoned her friend, Susan Kurtz, and told her that Greta and Alex attacked her. Ms. Kurtz then went to the Schultz residence. Apparently, none of the children went to the hospital or sought medical treatment other than a superficial examination by their father, Dr. Melvin Schultz, an emergency room and primary care physician. Following this incident, Mrs. Schultz moved in with her father and did not return to the family home, other than to retrieve her personal belongings.
Thereafter, the Jefferson Parish District Attorney's Office filed a bill of information charging the defendant, Wanda Schultz, with three counts of cruelty to a juvenile in violation of La. R.S. 14:93. She pled not guilty at arraignment. On February 16, 2001, the defendant's first trial ended in a mistrial when Judge Melvin C. Zeno recognized the defendant's husband as a neighbor. On May 15, 2001, a bench trial commenced before Judge Fredericka Wicker. After hearing three days of testimony, Judge Wicker took the matter under advisement.
At trial, the State began its case in chief with the testimony of Greta Schultz, then a sixteen-year-old student at Archbishop Chapelle High School. According to Greta, she was writing in a notebook when her mother entered her room at 11:00 p.m. on the night in question and "started yelling" at her to lower the volume of her radio and told Greta to fold her laundry and clean up her room. Greta said that she replied, "Okay," then told her mother to "Get out." Allegedly, her mother said, "No. I want this all done." Greta contended that her mother began picking clothes up from the floor and pushed her aside while Greta "just stood there." Eventually, Dr. Schultz entered the room because he heard the yelling. Mrs. Schultz left the room with Dr. Schultz but returned a second time to spray Greta with pepper spray.
Greta claimed that she turned off her radio and resumed writing, when "all of a sudden" Mrs. Schultz "burst the door open." Greta maintained that her mother asked her for a book that was on the floor. According to Greta, when she looked behind her at the book and then turned around to look at her mother, Mrs. Schultz began spraying her with something that made her eyes burn. Greta stated that Mrs. Schultz then pushed her, causing her to fall over her bed while her mother stood over her and continued to spray her. Greta testified that Alex then entered the room, and when her mother saw Alex, she *204 "aimed" the spray at him. Next, Bridgette entered the room and was also sprayed. The altercation ended when Dr. Schultz returned to Greta's room.
Defendant's son, Alex Schultz, who was thirteen-years-old at the time of the incident, testified that he heard his mother and Greta arguing about the radio being too loud, and that his dad went in Greta's room and "broke it up." Alex also testified that he saw his mother return to Greta's room a second time and then heard Greta scream. According to Alex, Mrs. Schultz sprayed him approximately four times with the spray once he entered Greta's room. He said the spray caused his eyes to burn and his vision to blur. Then, as he was leaving the room to look at his face in the mirror, Bridgette came into the room and his mother sprayed her as well.
Bridgette, who was eleven-years-old at the time of the incident, testified at trial that Greta's music was loud and that Mrs. Schultz entered Greta's room to ask her to turn it down. According to Bridgette, after Mrs. Schultz left the room, she turned the music down and closed her bedroom door. When Mrs. Schultz re-entered the room, Bridgette heard her mother "say something" to Greta. Thereafter, she heard a lot of noise and commotion. Bridgette contended that, when she entered Greta's room, her mother was on top of Greta. Bridgette also testified that she was sprayed in her eye when she attempted to dislodge Greta from underneath her mother.
Mrs. Schultz testified in her own defense and presented the testimony of her friend, Susan Kurtz, her uncle, Charles Augustine, her psychiatrist, Dr. Robert Davis, and Dale Standifer, an expert witness who testified that Mrs. Schultz was a battered woman. Mrs. Schultz stated that she and Dr. Schultz were married for twenty-five years before their recent divorce and that during the marriage that she had twelve pregnancies, seven children, four miscarriages and one stillborn child.[1] At the time of trial, four of the children resided in the home.[2] The others were over eighteen and had left home.
Mrs. Schultz recalled the chilling history of abuse she had endured over the years at the hands of her husband and children, Greta and Alex. She testified that when her husband abused her, Greta and Alex laughed. She also said that she was afraid of Greta and Alex, and had lost control of them. Mrs. Schultz told the court about specific incidents of abuse by the children. In December of 1999, when she asked Alex to turn off the television because it was too loud, Alex approached her with a large knife and told Greta that he was going to kill their mother. Greta laughed, and told Alex not to do it. On another occasion, Alex was playing a violent video game with his younger brother in the room, and Mrs. Schultz asked him to turn off the game. When she tried to retrieve the game, Alex spit on her. Then Alex began choking her, and told his father, who was watching, "Dad, I could kill her; please let me kill *205 her." Dr. Schultz told his son to stop. Mrs. Schultz said that the previous day, her husband had spit on her and called her a "worthless piece of shit." Mrs. Schultz also related that in January of 2000, one month before the instant event, Greta had tried to push her down the stairs. Mrs. Schultz testified that on another occasion she had something wrong with her arms that required the doctor to "immobilize them." According to Mrs. Schultz, both Greta and Alex pulled on her arms. Mrs. Schultz also testified that on yet another occasion she called the police and contacted Child Protection Services, but that "nothing was ever done. My husband was a doctor." Mrs. Schultz related that she began to sleep with the pepper spray and her rosary under her pillow at night after an incident when her husband tried to break her arm. She also stated that she carried the spray with her "constantly." Mrs. Schultz even kept a written record of her abuse.
On the night in question, Mrs. Schultz related that she took the younger children, Ryan and Bridgette to a parade. When they returned home, she went to her bedroom to rest. She recalled that Greta's music was so loud that she yelled from her bedroom for Greta to lower the volume. However, Greta did not comply with her request. Mrs. Schultz then went to Greta's room to ask her to lower the volume of the radio, and at the same time, noticed a book that belonged to her on Greta's floor.[3] She asked Greta for her book, and Greta said, "I told you to get the f**k out of my room." After Greta refused to give her the book, she left. Mrs. Schultz returned to her room, and found the pepper spray on her bed. Mrs. Schultz went back to Greta's room to retrieve her book, but Greta refused to give it back to her. According to Mrs. Schultz, Greta "pushed her again" and cursed at her. Mrs. Schultz testified that when Greta pushed her again "really hard," she sprayed Greta with the pepper spray. Then Greta hit her "again" and pulled her on to the bed.
Greta then called for Alex, who got on top of Mrs. Schultz and started choking her and hitting her head against the floor. Mrs. Schultz said she yelled for help, but her husband, who was in the bedroom down the hall, did not come to her rescue. Mrs. Schultz then sprayed Alex, and then Bridgette came into the room. Mrs. Schultz explained that Bridgette was sprayed because, in all the commotion, Mrs. Schultz had mistaken her for Greta. At some point, Dr. Schultz put an end to the fray, and took the pepper spray away from Mrs. Schultz.
Mrs. Kurtz testified that she went to the Schultz residence just after Mrs. Schultz called to tell her that Greta and Alex had attacked her. Mrs. Kurtz also said that she spoke to Bridgette that night, and Bridgette confirmed that Greta and Alex attacked her mother. The next day, Mrs. Kurtz telephoned Bridgette to talk about the incident. According to Mrs. Kurtz, Bridgette told her that she had not been sprayed, and that her mother was just "trying to defend herself." However, Mrs. Kurtz said that she had heard Bridgette tell the police the night before that "maybe a little bit" of the spray got on her.
At trial, Charles Augustine, Mrs. Schultz's uncle, corroborated a history of abuse and disrespectful behavior against Mrs. Schultz by Alex and Greta. Specifically, he testified that police had been called to the house before, that the children had abused Mrs. Schultz in the past and that he had witnessed Alex scream *206 and curse Mrs. Schultz. Further, he was at the house on one occasion when Greta took Mrs. Schultz's radio and pushed her. The police came to the house and made Greta give the radio back to her mother. Mrs. Schultz told her uncle she was afraid of the children because they could overpower her. The children told him Mrs. Schultz did not abuse them but that they did not like being told what to do.
Dr. Robert Davis, an expert psychiatrist, testified that he first met with Dr. and Mrs. Schultz in 1995 or 1996, after a physical confrontation between Greta and Mrs. Schultz. He also had consultations with various members of the Schultz family from June of 1997 until March of 2000. His diagnosis was that the family was "extremely dysfunctional," that Dr. Schultz was depressed, and Mrs. Schultz was depressed and codependent. Dr. Davis testified that after another physical confrontation between Mrs. Schultz and Greta, in which "Greta attacked her mother," he also met with the children. He recommended that Greta should be placed in a treatment program. According to Dr. Davis, Mrs. Schultz became the target of hostility when she attempted to discipline Greta. Additionally, he stated that Alex began to take a more defiant attitude, but that Greta was the "provocateur and ringleader." Dr. Davis said that the relationship between Greta and Mrs. Schultz progressively deteriorated instead of improving. Dr. Davis related that one of his office notes dated January 27, 1999 indicated he had observed that Mrs. Schultz was dealing with significantly defiant children, particularly a thirteen year-old daughter, who continued to tell other people vicious and malicious lies about Mrs. Schultz and encouraged the other children to lie and say that they were physically abused and beaten. Dr. Davis stated that Mrs. Schultz left the home sometime prior to June 30, 1999, and had stayed three nights at the Battered Women's Shelter because one of the children kicked her and her husband threw a piece of stick at her.
On May 22, 2001, the judge found Mrs. Schultz guilty as charged of cruelty to a juvenile regarding Greta, but not guilty regarding Alex and Bridgette. The trial judge's oral reasons for judgment reflect the sad and conflict-filled nature of this family:
There's no question in this Court's mind that Greta and Alex Schultz engaged in physical altercations with their mother over a several year period. There's no question in this Court's mind that Dr. Schultz engaged in physical altercations with his wife, and failed to intervene when the children engaged in physical altercations with their mother.
However, the plea in this case was not guilty, not guilty by reason of insanity. Given all of the inconsistencies in the testimony in this case, the fact remains that the mother entered the girl's room, either the girl pushed the mother, or the mother pushed the girl.
Basically however, the mother entered a room in which the door was closed, engaged in a second altercation with the girl, and ended up spraying the girl with pepper spray.
There's no evidence, or it is questionable as to whether or not the girl pushed the mother at that point in time, or whether the mother entered the room, argued with the girl and sprayed her, when the testimony as to whether or not the radio had been turned down is conflicted.
The girl Greta testified that she turned the radio down, however her sister Bridgette and Alex described the loud playing at the moment of the altercation. At any rate, Wanda Schultz entered the closed door with the pepper spray, having *207 returned to her own room and getting the spray and returning to the room.
There is no case law that indicates to me that I should apply battered women's syndrome to negate the facts of the direct incident in this case, therefore because the plea is not guilty, not guilty by reason of insanity, I find that the mother is guilty of cruelty to a juvenile with regard to the girl Greta.
With regard to the boy Alex, Alex entered the room in which the male' [sic] was already occurring. Basically the mother turned around with the spray and sprayed Alex. There's no indication that the mother entered the room with any intent to encounter Alex or spraying Alex. I find the mother not guilty with regard to the spraying of Alex.
With regard to the child, Bridgette, Bridgette entered the room and was standing behind her brother. When the boy was sprayed, Bridgette was inadvertently sprayed. I find the mother not guilty with regard to the spraying of Bridgette.
This is basically a situation for review by the Court of Appeals. I don't believe, in this instance I can apply the battered women's syndrome, although I find that the evidence in the record such as it is from Dr. Davis, and from the expert in battered women's syndrome, indicates that this woman did suffer from battered women's syndrome, and she suffered from same at the hand of both her husband and the child Greta and the child Alex.
I find that the children Greta and Alex engaged in physical difficulty against their mother over a sustained period of time beginning in 1995. However, I find no guidance in the case law to indicate to me that I can apply same in this case.
If there was a single altercation in which the mother had the spray when she first entered Greta's room, rather than a two-tired altercation, then I would find the mother not guilty, because in this instance it is understandable that the mother would have entered Greta's room with pepper spray, given the history of abuse toward the mother in this case.
This appeal followed.

ASSIGNMENTS OF ERROR
1. The trier of fact erred in denying Wanda Schultz's motion for post verdict acquittal because there was inconclusive evidence to prove who the aggressor was in the second encounter between Greta and Mrs. Schultz; hence, the trier of fact did not have sufficient evidence to determine whether Mrs. Schultz was defending herself or to determine Mrs. Schultz's intent.
2. The trier of fact incorrectly imposed on Wanda Schultz a duty to retreat from her own home and not enter her daughters room to correct her daughter for abusive and physically aggressive behavior, despite finding that Mrs. Schultz was reasonable to carry pepper spray to protect herself from her physically abusive children, who had abused her since 1995, and an abusive husband, and that she suffered from battered women's syndrome as a result.
3. Whether the record contains any errors patent.

DISCUSSION
On appeal, defendant argues that the trial judge improperly inferred that Mrs. Schultz had the specific intent to spray Greta. According to defendant, merely because Mrs. Schultz returned to Greta's room with the pepper spray does not support a finding that she specifically intended to spray her with the pepper *208 spray. However, contrary to defendant's assertion that specific intent is a requisite element of cruelty to a juvenile, the term "intentional" as used in La. R.S. 14:93(A) refers to a general criminal intent to mistreat or neglect. State v. Jackson, 98-1254 (La.App. 5 Cir. 3/30/99), 733 So.2d 657, 661. Further, the statute does not require intent to cause the child unjustifiable pain and suffering. State v. Barnett, 521 So.2d 663, 665 (La.App. 1 Cir.1988).
The defendant was convicted of cruelty to a juvenile, which is defined in La. R.S. 14:93(A) as follows:
Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child's age shall not be a defense.
Appellate review of the denial of the motion for post verdict judgment of acquittal is controlled by the standards set forth in Jackson v. Virginia, infra, which is codified in La.Code Crim. P. art. 821. See, State v. Addison, 00-1730 (La.App. 5 Cir. 5/16/01), 788 So.2d 608, 615. In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1293.
General criminal intent is "present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La. R.S. 14:10(2). See, State v. Sumler, 395 So.2d 766, 769 (La.1981); State v. Jackson, supra. The record reflects that Mrs. Schultz acted with general intent, in light of her testimony that she sprayed Greta with the pepper spray after an altercation occurred. Even if the trial judge found that Mrs. Schultz had the specific intent to spray Greta when she walked in the room, La. R.S. 14:93 requires only general intent.
The defendant also contends, in her appellant and reply briefs, that the evidence supported a finding that her actions were justified by the need to defend herself. La. R.S. 14:18 provides in pertinent part:
The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct.
The testimony is undisputed that Mrs. Schultz and Greta had an altercation about the music and the clothes on the floor when Mrs. Schultz initially entered Greta's room. Greta testified she told her mother to get out of her room. Greta and Mrs. Schultz were consistent in their testimony that Mrs. Schultz asked for a book that was on Greta's floor when Mrs. Schultz reentered Greta's room. The trial judge explicitly stated that both Alex and Greta "had engaged in physical difficulty" with Mrs. Schultz since 1995. The judge also concluded that Mrs. Schultz had Battered Woman's Syndrome, suffered at the hands of her husband and the two children, Greta and Alex. Moreover, the record reflects the inconsistent nature of the children's testimony as to who the actual aggressor was in this case while Mrs. Schultz's testimony has remained consistent. Additionally, Mrs. Schultz related instances of abuse to her psychiatrist, Dr. Robert *209 Davis, prior to this incident which tends to support her testimony.
Although the testimony conflicted concerning Mrs. Schultz's intent, the record supports the trial judge's conclusion that she did inflict pain upon her daughter Greta. However, our review of the record convinces us that Mrs. Schultz did not inflict "unjustifiable pain and suffering" as legally required by La. R.S. 14:93. Our conclusion is evidenced by the fact that none of the children sought medical treatment. Rather, the children were examined by their father, a physician, who deemed medical treatment unnecessary. Therefore, the state did not present sufficient evidence to prove that Greta endured unjustifiable pain or suffering a necessary element of the crime.
Historically, this Court has not condoned alleged acts of cruelty perpetrated by parents upon their children. However, to date this Court has not encountered a family situation such as this where children have routinely committed acts of cruelty upon their mother with the apparent acquiescence of the other parent. Thus, because we conclude the evidence is insufficient to support a conviction beyond a reasonable doubt under La. R.S. 14:93, we reverse defendant's conviction and sentence. Accordingly, we will forego analysis of the remaining assignments of error.
REVERSED; CONVICTION AND SENTENCE SET ASIDE.
NOTES
[1] Mrs. Schultz recounted that Dr. Schultz refused to let her bury the stillborn child, which died when the family lived in Maryland. When the family moved from Maryland to Louisiana in 1994 or 1995, they brought the body of the child with them in the car from Maryland. When they moved to Louisiana, Dr. Schultz kept the child's body in their freezer. When Mrs. Schultz begged him to bury the child, he moved it to the bedroom closet where it remained until a few days after this incident when police discovered it. A photograph of the closet containing the child's coffin was introduced at trial. According to Mrs. Schultz, all of the children knew that the child's body was kept in the closet.
[2] The four children are Greta, Alex, Bridgette, and Ryan, who was eight-years-old at the time of the incident.
[3] Mrs. Schultz explained that Greta and Alex used to take her personal belongings and destroy them, which is why she returned to Greta's room the second time.