# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## KA 04-564

**STATE OF LOUISIANA**

**VERSUS**

**STEVEN RUSSELL SEDLOCK**

\**********

APPEAL FROM THE
THIRTY-EIGHTH JUDICIAL DISTRICT COURT
PARISH OF CAMERON, NO. 111122-23
HONORABLE H. WARD FONTENOT, DISTRICT JUDGE

\**********

**BILLY HOWARD EZELL**
**JUDGE**

\**********

Court composed of Jimmie C. Peters, Glenn B. Gremillion, and Billy Howard Ezell, Judges.

**"Peters, J., dissents and assigns written reasons."**

**CONVICTION AFFIRMED; SENTENCE VACATED; CASE REMANDED FOR RESENTENCING.**

**Cecil R. Sanner**
**Jennifer Jones Bercier**
**Jones Law Firm**
**P. O. Drawer 1550**
**Cameron, LA 70631**
**(318) 775-5714**
**Counsel for:Appellee**
**State of Louisiana**

**Clifford L. Newman**
**The Newman Law Firm**
**1925 Enterprise Blvd.**
**Lake Charles, LA 70601**
**(337) 439-1060**
**Counsel for: Defendant/Appellant**
**Steven Russell Sedlock**

**Cecil R. Sanner**
**District Attorney 38th Judicial District Court**
**P. O. Box 280**
**Cameron, LA 70631**
**(337) 775-5713**
**Counsel for: State of Louisiana**

**Steven Russell Sedlock**
**Cameron Parish Jail**
**P. O. Box 1250**
**Cameron, LA 70631**

**EZELL, JUDGE.**

On April 29, 2003, the Defendant, Steven Russell Sedlock, was charged in a bill of information with second degree battery, a violation of La.R.S. 14:34.1. In a separate bill of information filed on the same day, the Defendant was charged with cruelty to juveniles, a violation of La.R.S. 14:93. The Defendant entered pleas of not guilty to each charge.

On February 2, 2004, the Defendant waived his right to trial by jury, the matters were consolidated for trial, and a bench trial commenced. After presentation of the evidence, the trial court found the Defendant guilty of simple battery and cruelty to juveniles. On February 9, 2004, the Defendant was sentenced to serve six months in the parish jail for simple battery, with credit for time served. For cruelty to juveniles, the Defendant was sentenced to two years in the parish jail, all suspended but time served, and the Defendant was placed on supervised probation for the remainder of the two years. The two sentences were ordered to run concurrently. A motion and order for appeal was filed on February 18, 2004.

In brief to this court, the Defendant states that he filed a motion for appeal as to both his convictions, but "specifically waives and abandons the appeal as to the conviction for Simple Battery and appeals only the conviction of Cruelty to a Juvenile." Accordingly, we will address only the conviction for cruelty to juveniles.

**FACTS**

The Defendant is the father of J.T.,[1] the victim in this matter. J.T was a fourth grade student at Grand Lake School on April 7, 2003. On that day, the assistant principal, Jacqueline Holmes, called J.T.'s parents to inform them that he had been sent to the office due to disciplinary problems. J.T.'s parents had a conference with

_____

[1]The victim in this matter is a minor. Accordingly, his initials will be used in accordance with La.R.S. 46:1844(W).

1

Ms. Holmes, and the Defendant then checked J.T. out of school. When leaving the office, the Defendant kicked J.T. in the buttocks and then kneed him in the back.

Ms. Holmes was concerned about J.T.'s well-being, so she called the police. Deputy Larry Broussard responded to Ms. Holmes' call and then went to the Defendant's residence. While at the Defendant's residence, Deputy Broussard observed various injuries to J.T. and arrested the Defendant. Paramedics subsequently examined J.T. at the residence.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by the court for errors patent on the face of the record. After reviewing the record, we find there is one error patent involving the sentence imposed for cruelty to juveniles.

For the offense of cruelty to juveniles, the trial court imposed the following sentence: "The Court is going to sentence him to two years in the parish jail. I'm going to suspend all but time served of that two years. I'm going to place him on supervised probation for the balance of that two-year period . . . ." Rather than specify the period of probation, the trial court placed the Defendant on probation for "the balance of" the two-year period. In other words, the trial court placed the Defendant on probation for whatever time remained after the "time served" portion was deducted from the two years. Since the "time served" portion of the sentence was not specified, we find the trial court imposed an unspecified and indeterminate period of probation. Louisiana Code of Criminal Procedure Article 893(A) provides in pertinent part: "The period of probation shall be specified and shall not be less than one year nor more than five years." Since the probation period imposed in the present case was not specified and is indeterminate, we find that the sentence imposed

2

for cruelty to juveniles should be vacated and the case remanded for resentencing specifying the period of probation in accordance with La.Code Crim.P. art. 893.

**ASSIGNMENT OF ERROR NUMBER ONE**

In his first assignment of error, the Defendant contends the verdict was not supported by the law and the evidence.

When sufficiency of the evidence is raised on appeal, this court has held:

> In considering questions of sufficiency of the evidence, a reviewing court must consider the evidence presented in the light most favorable to the prosecution and consider whether a rational trier of fact could have concluded that the essential elements of the offense were proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The reviewing court defers to rational credibility and evidentiary determinations of the trier of fact. *State v. Marcantel*, 00-1629 (La.4/3/02), 815 So.2d 50.

*State v. Chesson*, 03-606, p. 5 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 172, *writ denied*, 03-2913 (La. 2/13/04), 867 So.2d 686.

The Defendant was convicted of cruelty to juveniles, which is defined in La.R.S. 14:93(A) as "the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child."

> The term "intentional," within the meaning of this statute, has been defined as requiring only "general criminal intent," and not specific intent to cause a child unjustifiable pain and suffering. *State v. Morrison*, 582 So.2d 295 (La.App. 1 Cir.1991); *State v. Green*, 449 So.2d 141 (La.App. 4 Cir.1984). La.R.S. 14:10(2) provides:
>
> > General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.

In *State v. Comeaux*, 319 So.2d 897,899(La.1975), the Louisiana Supreme Court stated:

3

> "Mistreatment" is in common usage and is equated with "*abuse*." See Webster's Third New International Dictionary, Verbo abuse. In our opinion, "mistreatment" has a commonly understood meaning.

(Emphasis supplied.)

> In *Morrison*, the court recognized that: "As an alternative to proving that an accused intentionally mistreated or neglected a child, LSA-R.S. 14:93 permits the state to prove the accused was criminally negligent in his mistreatment or neglect of the child." 582 So.2d at 302. La.R.S. 14:12 defines criminal negligence as follows:

> > Criminal negligence exists when, although *neither specific nor general criminal intent is present*, there is such disregard of the interest of others that the offender's conduct amounts to a *gross* deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.

(Emphasis added.)

*State v. Cortez*, 96-859, p. 7 (La.App. 3 Cir. 12/18/96), 687 So.2d 515, 519-20.

> However, an offender's conduct is "justifiable, although otherwise criminal," when the "offender's conduct is reasonable discipline of minors by their parents." *See* La.R.S. 14:18(4). "Since 'justification' defenses are not based on the nonexistence of any essential element of the offense, but rather on the circumstances which make the accused's conduct excusable on policy grounds, such defenses should be treated as affirmative defenses which the accused must establish by a preponderance of evidence." *State v. Cheatwood*, 458 So.2d 907, 910 (La.1984).

*State v. Miller*, 98-1873, pp. 2-3 (La.App. 3 Cir. 10/13/99), 746 So.2d 118, 119, *writ denied,* 99-3259 (La. 5/5/00), 761 So.2d 541.

Thus, the State had to prove beyond a reasonable doubt that the Defendant intentionally mistreated or criminally neglected J.T. in such a manner as to cause unjustifiable pain and suffering.

Photographs of J.T. were taken by Deputy Broussard on the day of the incident. The photographs depict marks on J.T.'s back, abdomen, chest, face, neck, and leg. The Defendant disputes that he caused any injuries to J.T.'s neck, leg, and face.

4

Deputy Broussard testified that he saw blood oozing out along the edges of a wound on J.T.'s chest and the wound between his shoulder blades. Charles Thacker, who responded to Deputy Broussard's call for an ambulance, examined J.T. and testified that none of his injuries were oozing blood, but there was an injury to the abdomen where the skin was split and there was surface blood. Additionally, Mr. Thacker testified that J.T. had minor lacerations. Jeffrey Thibodeaux, who also took part in examining J.T., testified that his injuries were not oozing, but he did have blood blisters. J.T.'s mother testified that he had no open cuts.

The Defendant admitted he whipped J.T. on April 7, 2003. Additionally, he admitted that he may have left whelps on J.T. and "anything that was on him that was made with a belt I did that . . . ." The Defendant further testified that he meant to cause pain when he hit J.T. with the belt, but denied intentionally whipping J.T. in any manner that would cause extreme pain and harm. Additionally, the Defendant testified that he did not realize how many marks he left on J.T. and did not intend to cause the marks. The Defendant further testified that if he "wanted to beat somebody, a belt wouldn't be nowhere in the picture." The Defendant testified regarding how he felt about whipping J.T. and stated "I hated so much that I whipped him . . ." Deputy Broussard testified that while at the Defendant's residence, J.T. said it was his fault, the Defendant did not hurt him, and he was alright.

The Defendant alleged he whipped J.T. because of his conduct at school, one six-weeks he made five F's, and he was possibly going to fail the fourth grade for the second time.

Several defense witnesses testified regarding how long the marks depicted in the photographs were visible on J.T.'s body. Several witnesses testified that the marks were faint between April 10 and 13, 2003. One witness testified that the marks

5

were gone by April 14, 2003, while the others testified they were completely gone on April 16 and 17, 2003.

After hearing the evidence, the trial court found the Defendant guilty, stating the following:

> [O]n the charge of Second Degree Battery . . . . We do have, in the record, an absence of just how -- the level of physical pain suffered by the child. Obviously, there was pain involved. The Court can use circumstantial evidence to reach the point that there was pain. Cannot receive the marks without pain; however, the level of extreme is the burden of the State. And the Court finds that that level was not reached. So, the Court is going to find the defendant guilty of the responsive charge of Simple Battery.
>
> I'll turn my attention now to Cruelty to a Juvenile. Cruelty to a Juvenile must be either an intentional act or criminally negligent act. In this instance, the Court can rely even on the testimony of Mr. Sedlock himself -- may not be exact, my quotation, but he says I hate it that I whipped my son or I hated it. I hated that I whipped him at the time. Because by his own testimony, he had apparently lost control, and the amount of pain which he inflicted upon the child was not justified by the child's grades in school or misbehavior in school. And although, he may not have intended to impose the pain he did -- it doesn't have to be extreme pain. It just has to be unjustifiable pain, and certainly, the child did not deserve the punishment which he received. And all other elements of that crime are met.

The Defendant argues that considering the testimony of Deputy Broussard compared to the other witnesses, the record "clearly shows the inaccuracies, embellishment and enhancement of Deputy Broussard's testimony"; and that therefore his testimony is inaccurate and incredible and should be "disregarded and discounted as to his description of the alleged injury sustained" by J.T.

The Defendant attacks the investigation done by Deputy Broussard prior to his arrival at the Defendant's residence. The Defendant additionally contends that Deputy Broussard enhanced and exaggerated his testimony regarding injuries to J.T.'s face. The Defendant also argues that Deputy Broussard again exaggerated his testimony when he testified that he saw blood oozing from J.T.'s wounds. The

6

Defendant brings out inconsistencies in Deputy Broussard's testimony and that of Ms. Holmes regarding whether or not she requested a conference with J.T.'s parents.

The Defendant admitted he whipped J.T., causing injuries to him; therefore, the investigation done by Detective Broussard prior to his arrival at the Defendant's residence and testimony regarding whether or not Ms. Holmes intended to have a conference with J.T.'s parents is irrelevant as to whether the Defendant intentionally mistreated or criminally neglected J.T. Additionally, whether the Defendant injured J.T.'s face, neck, or leg is also irrelevant since he admitted he caused various other injuries found on J.T.'s body. Deputy Broussard did testify that one to two of J.T.'s injuries were oozing blood. Even if this was a mischaracterization, Mr. Thacker testified there was dried blood on an injury to J.T.'s abdomen.

The Defendant also points out the testimony of Deputy Broussard wherein he stated J.T. told him the Defendant did not hurt him. He alleges that the trial court, during closing arguments, acknowledged that it did not recall that portion of Deputy Broussard's testimony. The Defendant then goes on to state that he pointed out to the trial court that the testimony was on the record and could be heard if replayed but that the trial court apparently did not listen to that portion of the tapes of trial.

During closing arguments, defense counsel told the court that J.T. told Deputy Broussard he was not hurting. The court then asked defense counsel if that was in the record; defense counsel indicated that it was, and closing arguments continued. The record does not indicate the trial court acknowledged that it did not recall that portion of Deputy Broussard's testimony nor does the record reflect that defense counsel asked the court to listen to tapes of trial testimony.

The trial court could have chosen to accept certain portions of Deputy Broussard's testimony as true and reject other portions thereof. *See State v. Blake*,

7

03-1465 (La.App. 3 Cir. 5/5/04), 872 So.2d 602. The trial court found the Defendant guilty of cruelty to juveniles. It clearly made a credibility determination regarding the witnesses in this case, and that credibility determination should not be second-guessed by this court.

The Defendant noted several reasons why his actions were justified and did not cause J.T. unjustifiable pain and suffering, including the following:

1)  He explained to J.T. the reasons why he whipped J.T.;

2)  There was no pain and suffering "incurred as required to the degree of the statute" inasmuch as J.T. did not seek medical treatment for his injuries;

3)  He folded the belt in half when whipping J.T., so, even though there may have been a number of marks on J.T., each mark was not a blow;

4)  Part of his right wrist joint was blown away when he was shot with a shotgun, he had twenty-six screws in his right hand, which was disfigured, and only the two outer fingers could be used; and

5)  J.T. was almost as big as the Defendant, being five-foot-six inches to five-foot-seven inches tall and weighing approximately one hundred thirty five to forty pounds and, in comparison, the Defendant was five-foot-ten inches tall and weighed one hundred seventy pounds.

The Defendant cites *State v. Schultz*, 01-995 (La.App. 5 Cir. 4/10/02), 817 So.2d 202, *writ denied*, 02-1320 (La. 11/27/02), 831 So.2d 270, for the proposition that medical treatment must be sought for injuries inflicted in order for a defendant to be found guilty of cruelty to juveniles. In *Schultz*, the defendant sprayed her daughter with pepper spray. The defendant contended she acted in self-defense. The fifth circuit concluded that the defendant did inflict pain upon her daughter. However, she did not inflict unjustifiable pain and suffering which was evidenced by the fact that the child did not seek medical treatment. The child was examined by her father, a physician, who determined that medical treatment was unnecessary. The court held that the state did not present sufficient evidence to prove the daughter

8

experienced unjustifiable pain and suffering, which is a necessary element of the offense.

In *State v. Chacon*, 03-446 (La.App. 5 Cir. 10/28/03), 860 So.2d 151, the defendant was convicted of cruelty to juveniles. It was undisputed that the defendant struck the victim in the left arm. Photographs taken two days after the incident showed a large bruise in the shape of a fist on the victim's arm. The defendant argued that he did not have the intent to mistreat the victim, he was not angry when he hit the victim, he only hit the victim twice, the victim did not cry, and the victim was not thrown off balance by the impact of the punches. The fifth circuit stated that the fact that the victim did not cry or was not thrown off balance from the force of the blows was not determinative of whether the victim experienced unjustifiable pain and suffering. The court went on to note that "[a] bruise of the severity and magnitude exhibited by the photographs clearly demonstrates that unjustifiable pain and suffering were inflicted upon" the victim. *Id*. at 154. The court then held that the defendant either intentionally mistreated or was criminally negligent in his mistreatment of the victim when he chose to punch an eight-year-old with such force that it left a fist-shaped bruise.

In *State v. Swan*, 544 So.2d 1204 (La.App. 1 Cir. 1989), the defendant was convicted of cruelty to juveniles after two victims testified that he beat them. The court noted that defense counsel alleged in his brief that he examined photographs of the victims with a magnifying glass and detected "'a tiny mark on the forehead on one of the boys . . . .'" *Id*. at 1207. The court upheld the defendant's convictions.

We find based on *Chacon* and *Swan*, a victim need not seek medical treatment for the court to find he endured unjustifiable pain and suffering. We also find the injuries to the Defendant's hand and shoulder could affect the degree of force used

9

when whipping J.T.; however, the photographs speak for themselves. Based on the facts and circumstances of this case, the photographs of J.T., Mr. Thacker's testimony that the skin was open and surface blood was present on a wound on J.T.'s abdomen, and Mr. Thibodeaux's testimony that blood blisters were present, a rational trier of fact could have found that the State proved all elements of the offense.

The Defendant argues that his actions were justified as punishment for J.T.'s behavior at school. "Justification can be claimed when the conduct is reasonable discipline of minors by a parent." *Comeaux*, 319 So.2d 897. In *State v. Barnett*, 521 So.2d 663 (La.App. 1 Cir. 1988), the defendant was convicted of attempted cruelty to juveniles after spanking his child with a belt. On appeal, the defendant argued the evidence was insufficient to establish the intent element of the crime. Additionally, he argued he was justified in spanking his son and the real issue was whether or not his exercise of discipline was reasonable. The defendant testified that he spanked his child with a dress belt and was not angry when he did so. He quit spanking the child when he noticed red marks on the child's buttocks. The victim's cousin observed the spanking, and when asked whether the defendant's actions exceeded the ordinary realm of a spanking, said no. Photographs taken eight hours after the spanking depicted severe bruises on the child's buttocks and thighs. A physician who examined the child on the day of the spanking testified that he had bruises all over his body and that the bruises on one area of his leg were overlapping and were too numerous to count. The court concluded that the spanking inflicted on the victim was intentional mistreatment which caused pain and suffering exceeding the bounds of reasonable discipline.

We find that the evidence proved beyond a reasonable doubt that the spanking Defendant administered upon J.T. caused pain and suffering that exceeded the bounds of reasonable discipline and was, therefore, not justified. Accordingly, this assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the Defendant contends the trial court should have granted a judgment of acquittal at the close of the State's case.

In a bench trial, the trial court shall enter a judgment of acquittal if the evidence is insufficient to sustain a conviction. La.Code Crim.P. art. 778. The denial of a motion for judgment of acquittal "may be reversed on appeal only if there is no evidence of the crime or an essential element thereof or where the denial is a palpable abuse of discretion." *State v. Hargrave*, 411 So.2d 1058, 1061 (La.1982); *see also State v. Williams*, 34,370 (La.App. 2 Cir. 2/28/01), 781 So.2d 682.

We cannot say the trial court abused its discretion in denying the Defendant's motion for post-verdict judgment of acquittal. Accordingly, this assignment lacks merit.

## CONCLUSION

The Defendant's conviction for cruelty to juveniles is affirmed. However, the sentence imposed for cruelty to juveniles is vacated and the case remanded for the imposition of a determinate sentence wherein the trial court must specify any period of probation imposed pursuant to La.Code Crim.P. art. 893.

**CONVICTION AFFIRMED; SENTENCE VACATED; CASE REMANDED FOR RESENTENCING.**

11

NUMBER 04-564

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

STATE OF LOUISIANA

VERSUS

STEVEN RUSSELL SEDLOCK

PETERS, J., dissenting.

I respectfully disagree with the majority opinion in this matter insofar as it affirms the defendant's conviction of cruelty to a juvenile. In my opinion, the State of Louisiana (state) failed to establish the defendant's guilt beyond a reasonable doubt.

It is abundantly clear to me that J.T. required some degree of discipline. He had already failed the fourth grade once and was well on his way to failing a second time. The record reveals that J.T.'s attitude toward his educational and behavioral obligations left much to be desired, and this attitude had existed for an extended period of time. Thus, the defendant was faced with the task of, in some manner, redirecting J.T.'s attention to his shortcomings at school—both from an academic and a behavioral perspective. I do not disagree with the conclusion that the defendant's disciplinary measures were excessive. The question is whether they crossed the line into criminal activity.

As pointed out by the majority, the state may prove a violation of La.R.S. 14:93(A) by establishing that the defendant intentionally mistreated or neglected J.T. or that he did so in a criminally negligent manner. The state must also prove that the

mistreatment or neglect caused the child "unjustifiable pain or suffering." *Id.*

My review of the record suggests that the state did not assert whether its case was based on intent or negligence. However, in finding the defendant guilty of cruelty to a juvenile, the trial court clearly rejected any conviction on the intent provisions. In finding the defendant guilty, the trial court made the following statement:

> Cruelty to a Juvenile must be either an intentional act or criminally negligent act. In this instance, the Court can rely even on the testimony of Mr. Sedlock himself -- may not be exact, my quotation, but he says I hate it that I whipped my son or I hated it. I hated that I whipped him at the time. Because by his own testimony, he had *apparently lost control*, and the amount of pain which he inflicted upon the child was not justified by the child's grades in school or misbehavior in school. And although, *he may not have intended* to impose the pain he did -- it doesn't have to be extreme pain. It just has to be unjustifiable pain, and certainly, the child did not deserve the punishment which he received.

(Emphasis added.)

Because the trial court specifically found that the defendant "may not have intended" to impose unjustifiable pain or suffering, the only question is whether he acted in a criminally negligent manner. As suggested by the majority, this requires that the defendant's conduct amount "to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." La.R.S. 14:12.

The entire matter began with a complaint from school officials that the defendant kicked and kneed J.T. as they left school. However, when questioned concerning the nature of the defendant's actions at school, all witnesses for the state testified that they did not classify the defendant's actions as violent but as merely degrading or demeaning. The evidence of the degree of J.T.'s punishment at home is conflicting. While the investigating officer claimed to have found severe injuries,

2

the trained medical personnel who examined J.T. at approximately the same time concluded that he suffered only minor lacerations and bruises which required no medical treatment. While the photographs do certainly serve as admissible evidence of the alleged offense, the best evidence is that of the trained medical personnel called to the scene.

In its reasons for judgment, the trial court found no *gross* deviation below the reasonably careful man standard. It found only that "the amount of pain [the defendant] inflicted upon the child was not justified by the child's grades in school or misbehavior in school." This finding is insufficient to convict the defendant under La.R.S. 14:93.

The trial record establishes that the defendant has a criminal history. It also seems to establish that the defendant's motivation in punishing his child was to impress upon J.T. his father's desire that J.T. not repeat his father's mistakes. The punishment's emphasis was on the importance of education, not the defendant's desire to impose physical punishment. I do not condone the defendant's imposition of punishment in this case. In fact, I agree with the trial court and the majority that the punishment imposed on J.T. did not fit the offense he committed. However, I cannot conclude that it reached a level such that it constituted a criminal offense. While the defendant could benefit from parenting classes, I do not believe that La.R.S. 14:93 was intended to apply to such a situation, especially given the fact that the defendant could actually loose his parental rights for this conviction. *See* La.Ch.Code art. 1050.

Additionally, by finding the defendant guilty of the felony offense of cruelty to a juvenile, this court sends a chilling message to parents that corporal punishment

may well be a path to criminal prosecution. This opinion clearly establishes that this punishment is not only not acceptable for J.T.'s behavior, but that it is criminal. Should it be within our province to draw a line to state specifically the acceptable parameters of discipline for certain behaviors? I would think not and would reverse the conviction.