# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-877

**STATE OF LOUISIANA**

**VERSUS**

**C.S.D. & E.L.C.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 111319.1
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

### ELIZABETH A. PICKETT
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

**AFFIRMED.**

**Thibodeaux, Chief Judge, concurs in part and dissents in part with written reasons.**

**Michael Harson**
**District Attorney, Fifteenth JDC**
**Michele Billeaud**
**Assistant District Attorney**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**Counsel for State-Appellee:**
**State of Louisiana**

**Thomas L. Lorenzi**
**Lorenzi & Barnatt**
**P. O. Box 3305**
**Lake Charles, LA 70602**
**(337) 436-8401**
**Counsel for Defendants-Appellants:**
**C.S.D.**
**E.L.C.**

**PICKETT, Judge.**

<u>FACTS</u>

In November 2005, Office of Community Services (OCS) investigator Michael Vercher received a report that C.S.D. might be abusing her adopted son, T.D. Vercher went to T.D.'s school and interviewed him. The victim indicated that he lived in a restrictive home environment but denied being confined.

Vercher visited C.S.D. at home on November 7, 2005. She asked Vercher to take T.D. out of the home that night, and she had the boy's personal effects packed and ready by the door. Further, she admitted to Vercher that she would confine T.D. with a strap or tie-down on a regular basis. Also, she locked him in his bedroom at night. C.S.D. indicated that T.D. would get up at night and rummage around. She told Vercher that T.D. was having behavioral problems. School counselors had also indicated that the boy was having such problems. She also told Vercher that T.D. had been born with fetal alcohol syndrome. C.S.D. did not claim that T.D. had threatened her. Vercher left with T.D. and took him to a shelter.

During the drive to the shelter, T.D. told Vercher that he was often restrained with zip-ties. Vercher testified that when the boy had a physical examination, there was a mark on his arm consistent with such restraint. T.D. also claimed that he was sometimes chained to a post in the house. Vercher never spoke with E.L.C., but T.D. told him that she also sometimes tied him up.

On June 12, 2006, the Lafayette Parish District Attorney's Office filed a bill of information charging C.S.D. with two counts of cruelty to a juvenile, in violation of La.R.S. 14:93; two counts of false imprisonment, in violation of La.R.S. 14:46, and

1

one count of obstructing justice, in violation of La.R.S. 14:130.1.[1] In the same bill, the state charged E.L.C. as a principal to one count of cruelty to a juvenile, in violation of La.R.S. 14:24 and La.R.S. 14:93, one count of false imprisonment, in violation of La.R.S. 14:46, one count of obstructing justice, in violation of La.R.S. 14:130.1, and one count of simple battery, in violation of La.R.S. 14:35.

On May 31, 2007, the trial court held a hearing on the state's motion to introduce evidence of other crimes or bad acts. After hearing evidence and argument, the court granted the motion. On October 29, 2007, the state announced that a witness would be unavailable for trial, and requested to use the transcript of that witness's May 31 testimony. On the same date, C.S.D. and E.L.C. each waived her right to a jury trial.

Trial began on October 30, 2007. After the state closed its case-in-chief on November 1, the defendants moved for acquittal on all charges. After hearing argument, the trial court granted E.L.C.'s motion as to the charge of obstruction of justice and C.S.D.'s motion as to one count of false imprisonment and the charge of obstruction of justice.[2] At the close of the bench trial, the court found C.S.D. guilty of two counts of cruelty to a juvenile and of false imprisonment. The court found E.L.C. guilty as charged of cruelty to a juvenile and false imprisonment, but not guilty of simple battery.

C.S.D. was sentenced for the two convictions of cruelty to juveniles to five years at hard labor with all but one year suspended, four years active supervised

---

[1] Initials will be used extensively in this opinion to protect the victim's identity. La.R.S. 46:1844(W).

[2] The minutes incorrectly state that the court acquitted E.L.C. on count five; there were only four counts against E.L.C.

probation with the special conditions of fifteen hours per month of community service, and only supervised time with minor children, on each count. Additionally, C.S.D. was sentenced to six months in the parish jail on the conviction for false imprisonment. The sentences were ordered to be served concurrently.

E.L.C. was sentenced for the conviction of cruelty to juveniles to five years at hard labor with all but six months suspended, three years active supervised probation with the special conditions of fifteen hours per month of community service, and only supervised time with minor children. Additionally, E.L.C. was sentenced to six months in the parish jail on the conviction for false imprisonment. The sentences were ordered to be served concurrently.

The defendants now appeal their convictions and sentences.

## ASSIGNMENTS OF ERROR

1. Appellants were denied the right of confrontation and cross-examination of K.D. by restriction of cross-examination at a pretrial hearing pursuant to La.Code Evid. art. 404(B) and the subsequent introduction of a transcript of the testimony of K.D. upon a finding the witness was unavailable.

2. There was insufficient evidence to sustain the verdicts of guilt against C.S.D.

3. There was insufficient evidence to sustain the verdicts of guilt against E.L.C.

4. The sentences imposed upon C.S.D. are excessive in violation of Article I, Section 20 of the Louisiana Constitution of 1974.

5. The sentences imposed upon E.L.C. are excessive in violation of Article I, Section 20 of the Louisiana Constitution of 1974.

**ERRORS PATENT**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find there are numerous errors patent and a correction of the court minutes is needed.

*Misjoinder and Procedural Issue*

There was a misjoinder of offenses in the bill of information.

*C.S.D.*

The bill of information charged C.S.D. with the following: (1) cruelty to a juvenile, a violation of La.R.S. 14:93; (2) cruelty to a juvenile, a violation of La.R.S. 14:93; and (3) false imprisonment, a violation of La.R.S. 14:46; (4) false imprisonment, a violation of La.R.S. 14:46; and (5) obstruction of justice, a violation of La.R.S. 14:130.1. Louisiana Code of Criminal Procedure Article 493 provides for the joinder of offenses in a single bill under limited circumstances if the offenses joined are triable by the same mode of trial. Counts one, two, and five are punishable with or without hard labor and are triable by a six-person jury, all of whom must concur. Counts three and four, misdemeanors, are triable by a judge without a jury. La.Code Crim.P. art. 779. Consequently, counts one, two and five were properly joined under La.Code Crim.P. art. 493, but counts three and four, the misdemeanors, was improperly joined. However, C.S.D. did not file a motion to quash the bill of information on the basis of misjoinder of offenses, as required by statute. La.Code Crim.P. art. 495. Thus, review of this error is waived.

We note that because the two misdemeanors are not triable by jury, the proper mode of appellate review for these offenses was an application for writ of review, rather than an appeal. La.Code Crim.P. art. 912.1. Because C.S.D. was acquitted of

4

count four, any procedural issue regarding this charge is moot. However, the issue remains for count three, false imprisonment.

In *State v. Turner*, 04-1250 (La.App. 3 Cir. 3/2/05), 896 So.2d 286, *writ denied*, 05-871 (La. 12/12/05), 917 So.2d 1084, this court severed a misdemeanor conviction for possession of marijuana from the defendant's appeal of two felony convictions. This court ordered the "defendant to file a writ of review regarding the possession of marijuana conviction in compliance with the Rules of Court." *Id.* at 289. In *Turner*, the court noted that the defendant did not make any specific arguments regarding the misdemeanor conviction. This court considered the notice of appeal as a notice to file a writ of review within thirty days of its opinion, if the defendant desired to seek review of the misdemeanor conviction.

However, unlike in *Turner*, C.S.D. specifically argues excessiveness as to all of the sentences imposed. Additionally, the trial court imposed the sentences to run concurrently to each other. Thus, the sentences are intertwined. Accordingly, this court will not sever the misdemeanor conviction, but in the interest of judicial economy, address the issue involving the misdemeanor conviction as if the issue was before the court on supervisory writs. *State v. Williams,* 07-490 (La.App. 3 Cir. 10/31/07), 969 So.2d 744.

*E.L.C.*

E.L.C. was charged as follows: (1) principal to the charge of cruelty to a juvenile, a violation of La.R.S. 14:24 and 14:93; (2) false imprisonment, a violation of La.R.S. 14:46; (3) obstruction of justice, a violation of La.R.S. 14:130.1, and (4) simple battery, a violation of La.R.S. 14:35.

Louisiana Code of Criminal Procedure Article 493 provides for the joinder of offenses in a single bill under limited circumstances if the offenses joined are triable by the same mode of trial. Counts one, three, and five are punishable with or without hard labor and are triable by a six-person jury, all of whom must concur. Count two, a misdemeanor, is triable by a judge without a jury. La.Code Crim.P. art. 779. Consequently, counts one, three, and four were properly joined under La.Code Crim.P. art. 493, but count two, the misdemeanor, was improperly joined. However, E.L.C. did not file a motion to quash the bill of information on the basis of misjoinder of offenses, as required by statute. La.Code Crim.P. art. 495. Thus, review of this error is waived.

Moreover, because the misdemeanor was not triable by jury, the proper mode of appellate review for this offense was an application for writ of review, rather than an appeal. La.Code Crim.P. art. 912.1.

However, unlike in *Turner*, E.L.C. specifically argues excessiveness as to all of the sentences imposed. Additionally, the trial court imposed the sentences to run concurrently to each other. Thus, the sentences are intertwined with one another. Accordingly, this court will not sever the misdemeanor conviction, but in the interest of judicial economy, address the issue involving the misdemeanor conviction as if the issue was before the court on supervisory writs. *Williams*, 969 So.2d 744.

*Violation of Louisiana Code Criminal Procedure Article 873*

Louisiana Code of Criminal Procedure Article 873 requires a delay of twenty-four hours in sentencing after the denial of a motion for new trial unless the defendant expressly waives the delay or pleads guilty. According to this court, an express waiver occurs when defense counsel responds affirmatively when the trial court asks

if he is ready for sentencing. *See State v. Williams*, 01-998 (La.App. 3 Cir. 2/6/02), 815 So.2d 908, *writ denied*, 02-578 (La. 1/31/03), 836 So.2d 59, and *State v. Marcotte*, 01-1586 (La.App. 3 Cir. 5/15/02), 817 So.2d 1245, *writ denied*, 02-1687 (La. 2/7/03), 836 So.2d 96.

In this case, motions for post verdict judgment of acquittal and a new trial were filed on behalf of both the defendants.[3] A hearing was held, and after the trial court denied the motions, the following pertinent exchange occurred:

THE COURT: [T]he next step, we'll do the sentencing.

MR. LORENZI: [W]e would object to the ruling. . .

THE COURT: Let it be so noted. Okay? And for the sentencing, we'll

do Ms. [D.] first. I believe she was billed first. . .

As the above exchange reflects, the trial court denied the motions and proceeded immediately with sentencing without an express waiver; the trial court did not question the parties as to whether or not they were ready to proceed with the sentencing, and the trial court did not ask the defendants if they wanted to waive the twenty-four-hour delay provided for in La.Code Crim.P. art. 873.

In *State v. Dronet*, 97-991 (La.App. 3 Cir. 11/4/98), 721 So.2d 1038, this court strictly applied Article 873, finding that an announcement, "We're ready," for sentencing did not constitute a waiver. The *Dronet* court, relying on *State v. Dauzat,* 590 So.2d 768 (La.App. 3 Cir.1991), *writ denied,* 598 So.2d 355 (La.1992), which was based on *State v. Augustine,* 555 So.2d 1331 (La.1990), found that the failure to abide by the delay requires a sentence to be vacated simply because the defendant

---

[3]Information from the district court clerk's office indicates written motions were filed, but misplaced, except for the Motion for Post-Verdict Judgment of Acquittal field on behalf of E.L.C.

challenged his sentence on appeal. *See State v. Jason*, 01-1428 (La.App. 3 Cir. 7/10/02), 820 So.2d 1286.

However, in the majority of cases, this court has found an "implied waiver" analysis to be appropriate. *See State v. Schmidt*, 99-1412 (La.App. 3 Cir. 7/26/00), 771 So.2d 131, *writ denied*, 00-2950 (La. 9/28/01), 798 So.2d 105, *cert. denied*, 535 U.S. 905, 122 S.Ct. 1205 (2002).

In *State v. Giles*, 04-359, pp. 27-29 (La.App. 3 Cir. 10/6/04), 884 So.2d 1233, 1251-25, *writ denied*, 04-2756 (La. 3/11/05), 896 So.2d 62, this court found an implied waiver of the La.Code Crim.P. art. 873 delay, explaining in pertinent part:

> Defense counsel voiced no objection when sentencing was taken up immediately after the denial of the motion for post verdict judgment of acquittal and the motion for new trial. After arguments were presented by the State, defense counsel argued in support of a lenient sentence, filing letters submitted on Defendant's behalf and citing to the contents of one letter in particular. Defense counsel also referred to the sentencing range and the period of time already spent in jail by the Defendant. Although the entire sentence could be imposed without benefit of parole, probation or suspension of sentence, defense counsel argued that only the minimum (two years) should be imposed without these benefits.
>
> When giving its reasons for the sentence imposed, the trial court noted that it had sat through the trial in the matter, had read the pre-sentence investigation report and had read the letters and correspondence submitted. After citing both aggravating and mitigating factors, the trial court sentenced Defendant to a lower range sentence of seventeen years at hard labor, with the first two years to be served without benefits.
>
> In *State v. Taves*, 02-709 (La.App. 3 Cir. 1/15/03), 846 So.2d 1, *affirmed in part, reversed in part on other grounds*, 03-0518 (La.12/3/03), 861 So.2d 144, this court found a waiver of the twenty-four-hour delay, noting that defense counsel failed to voice an objection even though he was clearly aware that the sentencing was scheduled to be taken up the same day the motion for new trial would be heard. Additionally, we noted that after the trial court denied the motion for new trial and told the defendant to come up for sentencing, defense counsel declared his intent to present evidence at the hearing. In addition to presenting evidence, defense counsel argued for a suspended

sentence and stated he had reviewed the PSI and discussed it with the defendant. Finally, this court noted that defense counsel did not raise as error the trial court's failure to delay sentencing and did not allege prejudice. Although this court found an implied waiver of the article 873 delay, we found the sentences imposed were excessive and remanded for resentencing. In response to the State's application for review, the supreme court reversed this court's finding of excessiveness and reinstated the sentences without any mention of the trial court's failure to abide by the delay required by La.Code Crim.P. art. 873. (*See also State v. Schmidt*, 99-1412 (La.App. 3 Cir. 7/26/00), 771 So.2d 131, *writ denied*, 00-2950 (La.9/28/01), 798 So.2d 105, *cert. denied*, 535 U.S. 905, 122 S.Ct. 1205, 152 L.Ed.2d 143 (2002), for a thorough discussion of the jurisprudence regarding express and implied waivers of the twenty-four-hour delay period required by La.Code Crim.P. art. 873).

The present case is similar to *Taves* in that the record contains no colloquy between the trial court and the Defense regarding its readiness for sentencing. However, as in *Taves*, defense counsel presented arguments to the trial court in support of a lenient sentence and the trial court supported the sentence imposed with ample reasons. Unlike the defense counsel in *Taves*, the defense counsel in the present case did not present evidence at the sentencing hearing. Additionally, the record in the present case is not as clear as the record in *Taves* as to defense counsel's knowledge that sentence would be imposed immediately after the disposition of his motion for new trial and motion for post-verdict judgment of acquittal. However, Defendant here makes no claim of prejudice because of the failure to abide by the delay. Considering these facts, we find *Taves* analogous and find an implied waiver occurred in the present case.

Recently, in *State v. Brannon*, 07-431 (La.App. 3 Cir. 12/5/07), 971 So.2d 511, *writ denied*, 07-2465 (La. 5/9/08), 980 So.2d 689, this court found an implied waiver of the La.Code Crim.P. art. 873 delay where the defendant did not request a continuance of the sentencing and did not object to proceeding with sentencing. The defense presented no evidence at the hearing, but interrupted the trial court in setting forth its reasons for sentencing to request it not read a portion of the reasons based upon evidence not proven at trial. On appeal, the defendant did not assign as error the trial court's failure to abide by the La.Code Crim.P. art. 873 delay, and he did not allege prejudice.

In the present case, after the verdict was rendered, the trial court ordered a presentence investigation and set the sentencing hearing for January 7, 2008. The minute entries provide that there were two continuances of the sentencing hearing.

There is nothing in the record to indicate that defense counsel for the defendants were unaware of the date sentencing was to be taken up. Following denial of the motions for new trial and post verdict judgment of acquittal, defense counsel did not request a continuance of the sentencing and did not object to proceeding with sentencing. At the sentencing hearing, the court recessed to allow the parties to review the letters he had received. Additionally, a review of the transcript indicates defense counsel reviewed the presentence investigation reports. At the sentencing hearing, the defense called Russell Castille, the coordinator for pre-trial monitoring, who stated that the defendants were in full compliance with their pre-trial monitoring. Moreover, the defendants' attorneys submitted on behalf of each of the defendants sentencing memorandums. In his brief to this court, defense counsel does not assign the trial court's failure to delay sentencing as error and he does not allege any prejudice as a result of the error. Furthermore, the trial court supported the sentences with ample reasons. Consequently we find the facts in this case support implied waivers of the delay required by La.Code Crim.P. art. 873.

**DISCUSSION**

*Assignments of Error Number Two and Three*

We will address these assignment first, because they allege the evidence adduced at trial was insufficient.

> As instructed by *State v. Hearold*, 603 So.2d 731 (La.1992), we always take up sufficiency of the evidence assignments first. Regarding the sufficiency review, and the standard of review required by *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the court

10

in *State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97); 695 So.2d 1367, 1371 (citations omitted), said:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review.

*State v. Groce*, 00-1609, p. 2 (La.App. 3 Cir. 5/4/01) 786 So.2d 200, 201, *writ not considered*, 01-1636 (La. 5/30/02), 815 So.2d 91.

La.R.S 14:93 states, in pertinent part:

A. Cruelty to juveniles is:

(1) The intentional or criminally negligent mistreatment or neglect by anyone seventeen years of age or older of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child's age shall not be a defense . . . .

On appeal, the defendants suggest the state failed to show that T.D. was subjected to physical pain or suffering. Further, they cite jurisprudence that indicates psychological pain is not enough to sustain a conviction under La.R.S. 14:93.

As the defendants point out, in 1978 the supreme court stated:

> On the morning of the offense charged, the defendant spent her last pennies for milk and toast for the child and coffee for herself. In their two weeks in New Orleans the group had been denied help at a well-known charity, had obtained food at a mission on two nights and had been turned away on a third night, and on two occasions had gone to "the Catholic church . . . across the street from the park" where the defendant was given a dollar for food for herself and her child, but was refused help the third time. At the welfare office defendant was told "come back when you get an address." The defendant did not know of

11

an institution that would help her child, although she had "thought about the police station."

. . . .

In the case before us, if the defendant had taken her child to the police station to be turned over to the proper agency, or if she had taken him to the Volunteers, she could not have been convicted of cruelty to the child, even though he might have suffered every symptom of the separation syndrome in young children. This is for two reasons: first, there would have been no mistreatment or neglect; second, (a) there would have been no pain or suffering, or (b) the psychological pain and suffering caused by the separation from the parent would not have been unjustified.

The evidence of the abandonment in *this* case is not evidence of neglect. The defendant could no longer care for her child. She could not feed him or provide diapers for him, to say nothing of shelter. She left him on Bourbon Street because of the heavy pedestrian traffic, believing he would soon be in the hands of the authorities.

"Unjustifiable pain and suffering" must be understood to mean something more than psychological harm resulting from the simple fact of separation of parent and child. The only evidence of pain and suffering in the record before us (and it is scant and speculative) shows rather minimal distress on the part of the child because of his mother's absence.

Because of the lack of evidence of these necessary elements of the offense charged, we find error in the trial court's ruling on the motion to acquit. However, we do not hold that abandonment cannot be "neglect;" *nor do we hold that psychological harm cannot be "unjustifiable pain and suffering."*

*State v. Barr*, 354 So.2d 1344, 1346-47 (La.1978) (second emphasis added).

In another cruelty case a few years later, the supreme court explained:

The record reflects that on June 29, 1979, defendant prepared a breakfast of eggs, grits and juice for her four children: James, age 15; Troy, age 14; Angel, age 12; and Navara, age 11. Defendant ground up into the food a quantity of rat poison which she had purchased on June 23, 1979, with the intent of killing her children with it. Defendant served the food to the children. At one point, defendant told the children that they did not have to eat the food and started to remove it, but the children told her that they were hungry and she allowed them to finish the meal. Defendant then consumed 120 sleeping pills in an

12

attempt to take her own life. Upon her husband's return home a short time later, defendant informed him of what she had done. She also told each of the children that she had fed them rat poison.

Defendant and the four children were taken to the hospital for treatment. The children were administered a "charcoal-tasting" liquid and a quantity of water to induce vomiting. Each of the children subsequently vomited. The children were also given shots and each child had to have a blood sample taken.

While the children generally testified favorably to their mother by denying that they experienced any pain or suffering as a result of the poisoning or their subsequent hospital treatment, Navara Hathorn did state that he experienced "some pain" in his stomach after eating breakfast and Angel Hathorn admitted that the induced vomiting had hurt her. Both of these children complained of the liquid administered to induce vomiting.

*State v. Hathorn*, 395 So.2d 783, 784-85 (La.1981). We note that *Barr* was one of

the cases cited by the dissent, which stated the evidence did not support a finding of

pain and suffering. According to the dissent, two of the children testified they felt no

pain, one testified to "slight and transitory pains," and the fourth child testified to

feeling "slight discomfort." *Id.* at 789.

The present case is distinguishable from *Barr*. It is clear the child in *Barr* did

not suffer any physical injury or pain whatsoever from the defendant's actions. In the

present case, Vercher testified that C.S.D. admitted to him that she had been tying up

T.D. on a regular basis.

According to T.D., C.S.D. and E.L.C. began restraining him after one of his

sisters, K.D., left the home. Other testimony, by OCS investigator Mary Baudoin,

indicated that K.D. was placed in State custody in May 2002. T.D. testified that he

would be chained to a post in his house, or zip-tied to a desk. He suggested this

happened on days when he did something wrong at school. However, he stated that

C.S.D. did not tell him why she confined him. He also testified that she let him have

13

"bathroom breaks" approximately every two hours. If he had to use the bathroom at other times, then he would have to "use it on myself." He also testified that he would sometimes be left alone in the house, while restrained. He wore a diaper, and sometimes she would leave him some water. The child has an ongoing problem with chronic bed-wetting, for which he was placed on medication. T.D. also testified that he would sometimes be tied or chained to a table in C.S.D.'s gazebo, and that he slept on a cot, with his left wrist and right ankle tied to it. He testified that his adoptive aunt, E.L.C., sometimes helped C.S.D. restrain him, and sometimes placed him in restraints herself, despite occasionally expressing reservations to C.S.D.

We find that T.D., then twelve years old, undoubtedly suffered due to the restraints imposed upon him by C.S.D. and E.L.C. He already had a bed-wetting problem and was in a diaper, but at night he had to endure being tied to a cot from two sides. In the afternoons, he was also restrained. Further, when he was removed from the home he had a mark on his wrist consistent with being tied down. We find the evidence established beyond a reasonable doubt that the child suffered.

The defendants also argue that even if T.D. did suffer, such suffering was not unjustifiable, within the meaning of La.R.S. 14:93. The defendants highlight testimony that T.D. would beat his dog with a golf club, that he destroyed toys, played with matches, once took some bullets to school, and once held a smaller child underwater in the defendant's pool, in order to make her release a toy. There was also testimony that T.D. was a habitual liar and a thief. While the record supports the defendants' argument that T.D. was "destructive, dishonest, and unpredictable," it does not indicate that the defendants' acts of tying up T.D. on multiple occasions were justified.

14

This court has explained:

> However, an offender's conduct is "justifiable, although otherwise criminal," when the "offender's conduct is reasonable discipline of minors by their parents." *See* La.R.S. 14:18(4). "Since 'justification' defenses are not based on the nonexistence of any essential element of the offense, but rather on the circumstances which make the accused's conduct excusable on policy grounds, such defenses should be treated as affirmative defenses which the accused must establish by a preponderance of evidence." *State v. Cheatwood*, 458 So.2d 907, 910 (La.1984).

*State v. Miller*, 98-1873, pp. 2-3 (La.App. 3 Cir. 10/13/99), 746 So.2d 118, 119, *writ denied*, 99-3259 (La.5/5/00), 761 So.2d 541.

. . . .

The Defendant cites *State v. Schultz*, 01-995 (La.App. 5 Cir. 4/10/02), 817 So.2d 202, *writ denied*, 02-1320 (La.11/27/02), 831 So.2d 270, for the proposition that medical treatment must be sought for injuries inflicted in order for a defendant to be found guilty of cruelty to juveniles. In *Schultz*, the defendant sprayed her daughter with pepper spray. The defendant contended she acted in self-defense. The fifth circuit concluded that the defendant did inflict pain upon her daughter. However, she did not inflict unjustifiable pain and suffering which was evidenced by the fact that the child did not seek medical treatment. The child was examined by her father, a physician, who determined that medical treatment was unnecessary. The court held that the state did not present sufficient evidence to prove the daughter experienced unjustifiable pain and suffering, which is a necessary element of the offense.

In *State v. Chacon*, 03-446 (La.App. 5 Cir. 10/28/03), 860 So.2d 151, the defendant was convicted of cruelty to juveniles. It was undisputed that the defendant struck the victim in the left arm. Photographs taken two days after the incident showed a large bruise in the shape of a fist on the victim's arm. The defendant argued that he did not have the intent to mistreat the victim, he was not angry when he hit the victim, he only hit the victim twice, the victim did not cry, and the victim was not thrown off balance by the impact of the punches. The fifth circuit stated that the fact that the victim did not cry or was not thrown off balance from the force of the blows was not determinative of whether the victim experienced unjustifiable pain and suffering. The court went on to note that "[a] bruise of the severity and magnitude exhibited by the photographs clearly demonstrates that unjustifiable pain and suffering were inflicted upon" the victim. *Id.* at 154. The court

15

then held that the defendant either intentionally mistreated or was criminally negligent in his mistreatment of the victim when he chose to punch an eight-year-old with such force that it left a fist-shaped bruise.

In *State v. Swan*, 544 So.2d 1204 (La.App. 1 Cir.1989), the defendant was convicted of cruelty to juveniles after two victims testified that he beat them. The court noted that defense counsel alleged in his brief that he examined photographs of the victims with a magnifying glass and detected " 'a tiny mark on the forehead on one of the boys . . . .' " *Id.* at 1207. The court upheld the defendant's convictions.

We find based on *Chacon* and *Swan*, a victim need not seek medical treatment for the court to find he endured unjustifiable pain and suffering. We also find the injuries to the Defendant's hand and shoulder could affect the degree of force used when whipping J.T.; however, the photographs speak for themselves. Based on the facts and circumstances of this case, the photographs of J.T., Mr. Thacker's testimony that the skin was open and surface blood was present on a wound on J.T.'s abdomen, and Mr. Thibodeaux's testimony that blood blisters were present, a rational trier of fact could have found that the State proved all elements of the offense.

The Defendant argues that his actions were justified as punishment for J.T.'s behavior at school. "Justification can be claimed when the conduct is reasonable discipline of minors by a parent." *Comeaux*, 319 So.2d 897. In *State v. Barnett*, 521 So.2d 663 (La.App. 1 Cir.1988), the defendant was convicted of attempted cruelty to juveniles after spanking his child with a belt. On appeal, the defendant argued the evidence was insufficient to establish the intent element of the crime. Additionally, he argued he was justified in spanking his son and the real issue was whether or not his exercise of discipline was reasonable. The defendant testified that he spanked his child with a dress belt and was not angry when he did so. He quit spanking the child when he noticed red marks on the child's buttocks. The victim's cousin observed the spanking, and when asked whether the defendant's actions exceeded the ordinary realm of a spanking, said no. Photographs taken eight hours after the spanking depicted severe bruises on the child's buttocks and thighs. A physician who examined the child on the day of the spanking testified that he had bruises all over his body and that the bruises on one area of his leg were overlapping and were too numerous to count. The court concluded that the spanking inflicted on the victim was intentional mistreatment which caused pain and suffering exceeding the bounds of reasonable discipline.

*State v. Sedlock*, 04-564, pp. 4, 8-10 (La.App. 3 Cir. 9/29/04), 882 So.2d 1278, 1281, 1283-84, *writ denied*, 04-2710 (La. 2/25/05), 894 So.2d 1131 (alteration in original).

16

Considering the jurisprudence discussed in *Sedlock*, we find that the *Schultz* case is anomalous. While the standard *Schultz* enunciates can be applied easily, it is not reasonable. There may be many situations in which medical treatment is not sought, but the pain and suffering inflicted is nonetheless criminal. The instant case presents such a situation. *Sedlock* and the jurisprudence cited therein demonstrate that the suffering inflicted upon T.D. was not justified. The boy testified he was tied down on a nightly basis after K.D. left the home. Also, his door was locked from the outside. For the reasons discussed, these two assignments lack merit.

*Assignment of Error Number One*

In this assignment of error, the defendants contend the trial court erred by admitting into evidence a transcript of K.D.'s testimony from a pre-trial hearing. Before trial, the state filed a notice of intent to introduce evidence of other crimes or bad acts by the defendants. The court held a hearing on the motion, on May 31, 2007, and K.D. was one of the witnesses. However, she was not present for trial.

The defendants argue the trial court erred by finding that K.D. was unavailable to testify and further erred in finding that the defendants had adequate opportunities to cross-examine K.D. at the pre-trial hearing. Even if the admission of the unnecessary evidence was error, it would be harmless error. This court has explained:

> Recently, in *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court abrogated its decision in *Roberts*, indicating that reliability alone was insufficient to satisfy the Confrontation Clause. The court held the following:
>
>> Where testimonial evidence is at issue . . . the <u>Sixth Amendment</u> demands what common law required: unavailability and a prior opportunity for cross-examination. We leave for another day any effort to spell out a comprehensive definition of "testimonial." Whatever else the term covers, *it applies at a minimum to prior testimony* at a preliminary hearing, before a grand

17

jury, or *at a former trial; and to police interrogations.*
These are the modern practices with closest kinship to the
abuses at which the Confrontation Clause was directed.

*Id.*, 124 S.Ct. at 1374 (footnotes omitted)(emphasis added).

. . . .

In *Crawford*, the Supreme Court expressed no opinion regarding
whether a harmless error analysis should be applied to such violations.
Id. at n. 1. In all of the cases wherein the ruling in *Crawford* has been
relied upon, the courts employed the harmless error analysis.
Additionally, the admission of hearsay evidence is generally subject to
the harmless error analysis. *State v. St. Marie*, 97-0168 (La.App. 3 Cir.
4/18/01), 801 So.2d 424.

Confrontation errors are subject to a *Chapman v. California*, 386
U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) harmless error analysis.
See *Delaware v. Van Arsdall*, 475 U.S. [673] at 684, 106 S.Ct. [1431]
at 1438[, 89 L.Ed.2d 674 (1986)]; *State v. Hawkins*, 96-0766
(La.1/14/97), 688 So.2d 473, 478; *State v. Wille*, 559 So.2d 1321, 1332
(La.1990).

The correct inquiry is whether, assuming that the damaging
potential of the cross-examination were fully realized, a
reviewing court might nonetheless say that the error was
harmless beyond a reasonable doubt. Whether such an
error is harmless in a particular case depends upon a host
of factors, all readily accessible to reviewing courts. These
factors include the importance of the witness' testimony in
the prosecution's case, whether the testimony was
cumulative, the presence or absence of evidence
corroborating or contradicting the testimony of the witness
on material points, the extent of cross-examination
otherwise permitted, and, of course, the overall strength of
the prosecution's case.

*Delaware v. Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438.

*State v. Robinson*, 01-273, pp. 9-10 (La.5/17/02), 817 So.2d 1131, 1137.

*State v. Cox*, 04-42, pp. 7-10 (La.App. 3 Cir. 6/16/04), 876 So.2d 932, 937-39.

Regarding the factors from *Van Arsdall* cited above, we find that K.D.'s testimony was not important to the present case, in which T.D. was the victim.[4] A review of the hearing transcript shows that K.D. testified that defendants regularly confined her in a windowless room. Such testimony went to system, intent, and lack of mistake on the defendants' part. Thus, K.D.'s testimony arguably aided the state in proving that T.D. was confined. However, as noted in our review of the sufficiency of the evidence, the defendants do not contest that they confined T.D. Rather, they claim: (1) that he did not suffer, for purposes of La.R.S. 14:93, or (2) if suffering did occur, it was not "unjustifiable" within the meaning of the statute. K.D.'s testimony at the pre-trial hearing did little, if anything, to help the state regarding these two arguments.

Regarding the next factor, the testimony does not appear to be cumulative, as K.D. testified about herself and her own confinement. Apparently, she did not know whether T.D. was being confined or not. However, the fact that she was unable to shed any direct light on T.D.'s situation supports the conclusion that her testimony was not important to the present case.

K.D.'s testimony was corroborated to some extent by trial testimony that C.S.D. admitted confining T.D. More directly, her testimony was corroborated by OCS investigator Mary Baudoin, who testified that C.S.D. admitted confining K.D.

Regarding the next factor from *Van Arsdall*, we note that defense counsels' cross-examination of K.D. does not appear to have been curtailed. Before cross-examining K.D., C.S.D.'s counsel suggested that his ability to cross-examine the girl would be limited by the fact that he lacked a copy of the OCS case plan regarding

---

[4]Charges involving another sister, whose initials are also K.D., were among those which were dismissed, or for which Defendants were acquitted.

K.D. However, Judge Castle pointed out that C.S.D. should have had a copy already, from the OCS proceedings. During the cross-examinations conducted by both defense counsel, neither was limited by the court. In the defendants' brief, they complain that the court improperly limited cross-examination at the hearing, but the instances they cite occurred during the testimony of T.D., not K.D.

Regarding the final factor, we find that the state's case below was strong. As discussed in the earlier *Jackson* reviews, the defendants do not contest that T.D. was restrained. Further, there was ample evidence of such restraint in the record.

Having applied the *Van Arsdall* factors to the present case, we find that even if error occurred regarding the admission of the transcript of K.D.'s pre-trial testimony, it was harmless. Therefore, the assignment lacks merit.

*Assignments of Error Number Four and Five*

Defendants, C.S.D. and E.L.C., argue that their sentences are constitutionally excessive under the circumstances of the case. They contend that their roles as parents and the minors' behavior allowed them the latitude to discipline the children and that their actions were necessary and not cruel or injurious to the children. They argue that their punishment is more severe than punishments given to others who actually inflicted pain and suffering on children.

C.S.D. was convicted of two counts of cruelty to juveniles and one count of false imprisonment. The offense of cruelty to juveniles provides for a range of punishment of a fine of "not more than one thousand dollars or imprisoned with or without hard labor for not more than ten years, or both." La.R.S. 14:93. The offense of false imprisonment provides for a range of punishment of "not more than two hundred dollars, or imprisoned for not more than six months, or both." La.R.S. 14:46.

The defendant was sentenced to five years hard labor with all but one year suspended, four years active supervised probation with the special condition of fifteen hours per month of community service, and only supervised time with minor children on each count of cruelty to a juvenile, and six months in the parish jail on the conviction for false imprisonment. The sentences were ordered to be served concurrently.

E.L.C. was convicted of one count of principal to the offense of cruelty to juveniles and one count of false imprisonment. The trial court sentenced her to five years at hard labor with all but six months suspended for the cruelty to a juvenile offense and six months in the parish jail for the false imprisonment offense. The trial court further ordered three years supervised probation and fifteen hours per month of community service. The sentences were ordered to be served concurrently.

> The Eighth Amendment to the United States Constitution and the Louisiana Constitution Article I, § 20 prohibits the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. The trial court should consider the defendant's personal history: age, family ties, marital status, health, employment record, as well as his prior criminal record, seriousness of offense and the likelihood of rehabilitation in determining an appropriate sentence. A trial court is afforded great discretion in determining sentences and sentences within the statutory limit will not be set aside as excessive absent clear abuse of that broad discretion. In reviewing a sentence for excessiveness, the appellate court must consider the crime and the punishment in light of the harm to society and gauge whether the penalty is so disproportionate as to shock its sense of justice.

*State v. Crawford*, 05-494, p. 6 (La.App. 5 Cir. 1/31/06), 922 So.2d 666, 669 (footnotes omitted).

> In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766 So.2d 501.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

In the current case, at the sentencing hearing, defense counsel put Russell Castille on the stand. The witness testified that he was the coordinator for the pre-trial monitoring program. The program screens people released on their own recognizance. The defendants were in the program. He stated that they reported in weekly as required. They never missed a week, and in all other respects complied with the requirements of the program.

The state argued to the trial court that under no circumstances was there justification for C.S.D. to tie a child to a cot with chains in such a way that would not allow him to even roll over during the night, "that he slept on this cot because he didn't deserve to have a good bed." "And most importantly, she defied a court order. No more confinement of children."

Following arguments from the state and the defendants at the sentencing hearing, the trial court stated as reasons for C.S.D.'s sentences as follows:

> And the reasoning behind what I'm doing, there's two (2) things that I consider, and one is punishment and one is public safety. Punishment, I think you've--this sentence will justly punish what you've done. The term comes to my mind, "good people do bad things occasionally." And I think you, in all respects, are a lot different than most people I deal with here. And I think you did a lot of good. And that's one of the reasons that I'm not sentencing you very hard is because I'm going to judge you by not only the bad thing that I see that you've done but by the good things that you've done. And I've taken that into account by suspending your sentence like I have.
> . . . .
>
> You know, I have to send a message to the public that the behavior that you were convicted of is wrong. I'm not quite sure, you know, from hearing stuff in the courtroom that you've ever acknowledged that it was wrong, and I need to make sure the public understands that tying your kid up, strapping him up, those kind of behaviors are not appropriate.

In brief, C.S.D. argues that the punishment is constitutionally excessive. She argues "that she is a sixty year old widow whose only 'prior record' is one of stellar accomplishments as a teacher and mother. Her parenting skills are epitomized by having raised three children who have achieved the roles of doctor, aeronautical engineer and loving mother."

In brief, E.L.C. argues that she has no prior criminal history and has raised two children, a lawyer and an accountant, and that she is only the aunt to the two children involved in this case and is being punished too severely considering that she had an "obvious lesser role in the conduct for which sentence is imposed." At the sentencing, the trial court gave no specific reasons for her sentences, stating only that she was a principal to the offenses. However, the trial court agreed that considering diminution of sentences, she had served her time, but that it could not order her immediate release because that was a concern of the Department of Corrections. The trial court, however, put into the record that the Department of Corrections should expedite her release.

The defendants point to *Sedlock*, 882 So.2d 1278, wherein "the multiple offender who beat a child and was sentenced to two years in the parish jail, which was suspended except for time served." In *Sedlock,* the juvenile's father was called to school because of behavioral problems. On the way out of school, Sedlock kicked the fourth grader on his bottom and kneed him in the back. Subsequent investigation found that the father had beat his son on other occasions, leaving bruises and contusions.

> While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste,* 594 So.2d 1 (La.App. 1 Cir.1991).

23

> Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook,* 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*Smith*, 846 So.2d at 789.

However, in a case where the injury to the juvenile was not as substantial as in *Sedlock*, this court did not consider nine years at hard labor excessive for the offense of cruelty to a juvenile. *State v. Edwards,* 626 So.2d 501 (La.App. 3 Cir. 1993), *writ denied,* 93-3125 (La. 2/3/95), 649 So.2d 400. In *Edwards*, the offender, while disciplining her, picked a four-year-old girl up by the scruff of the neck, like a mother cat picks up her kitten, which caused the child to loose her breath and caused tearing and scaring to her neck. The offender in *Edwards* was a young engineer with no prior record. The child later died when she sustained a fall and cracked her head on a bathtub ledge. She had been placed in the bathroom by Edwards as a punishment.

The fifth circuit did not consider a ten-year sentence for cruelty to a juvenile excessive where the father ignored his eight-year-old son's health. *Crawford*, 922 So.2d 666. Crawford admitted that he had slapped the child, made him stay outside in the cold while he did drug deals, and ignored an infection from a mosquito bite the child received while he was alone outside. The child required three days hospitalization for the infection. Crawford admitted that he did not fill the prescription for the antibiotics he was given because he said he did not have the money to do so. He also admitted he would drop the child off a block away from his girlfriend's house and leave him with no intent to retrieve him because the girlfriend did not want the child around. In both *Crawford* and *Edwards*, the fifth circuit and this court, in fashioning the sentences, noted the offenders' lack of remorse and that

24

they knew the children were particularly vulnerable because of their youth, and used their position over them to commit the offenses.

In the current case, there was testimony that the defendants tied the victims with zip ties and chains for extended periods of time. The boy was chained to his bed at night, and because he had problems with incontinency, he was put into diapers, and often had to spend the night in soiled diapers. As noted, the first victim came to the attention of the authorities and the defendants were ordered to cease restraining the children in such a manner, but the defendants continue to do so.

There was testimony the children were unruly and edgy, and the defendants' were in all other respects caring and nurturing people. However, considering the children's testimonies and C.S.D.'s admission that they tied the children with zip ties to restrain them, and that there appeared to be no remorse, and considering the above punishments inflicted on other offenders under similar situations, we cannot say the trial court abused its vast discretion when it sentenced defendants. Their sentences are not such that would shock this court's sense of justice.

Accordingly, we find there is no merit to this assignment of error.

### CONCLUSION

The defendants' convictions and sentences are affirmed.

**AFFIRMED.**

25

STATE OF LOUISIANA

VERSUS

C.S.D. & E.L.C.


**THIBODEAUX, Chief Judge, dissenting in part.**


Once again, our court has affirmed sentences which make no meaningful contribution to any acceptable penal goals. We have done so under the rationale of the abuse of discretion standard. That standard is legitimate and, of course, legally correct. However, these sentences remind me of the Latin clause, *discretio est discernere per legem quid sit justum* which, literally translated, means that unlimited discretion does not exist in the law. Meaningful discretion must be supported by sound factual underpinnings and supported by what the law directs, not what is authorized. In my view, the trial court abused its sentencing discretion in these cases.

The majority lends its judicial imprimatur to the trial court's consideration of two things: punishment and public safety. I infer the term used by the trial court "public safety" to mean sending "a message to the public," a phrase used by the trial court in its reasons for sentencing. Sentencing, however, must consider the likelihood of rehabilitation. *State v. Crawford*, 05-494 (La.App. 5 Cir. 1/31/06), 922 So.2d 666. Purely and simply, the trial court's sentences focus on using C.S.D. and E.L.C. as examples through the use of punishment.

Under the circumstances of this case, incarceration for five years is not needed to send a "message to the public." If a five year suspended sentence with conditions of probation would accomplish the same goals, what legitimate penal goals then are served by the imposition of imprisonment in this case? Only one—and that is punishment. While that may be acceptable in some cases, it is not in these particular cases. Neither defendant has any prior criminal history. C.S.D. has raised a doctor, an aeronautical engineer, and a daughter who is a loving mother. E.L.C. has raised two kids—an attorney and an accountant. As the trial judge pointed out, these were "in fact good people."

The cases relied upon by the majority do not involve similar circumstances and serve to undermine the principle of proportionality in sentencing. While the crime is similar or identical, the facts are very dissimilar. For example, in *State v. Edwards*, 626 So.2d 501 (La.App. 3 Cir. 1993), *writ denied*, 93-3125 (La. 2/3/95), 649 So.2d 400, the child victim *died* as a result of the offender's actions. In the case under consideration, nothing of the sort occurred. In *State v. Crawford*, 922 So.2d 666, *the child victim required three days of hospitalization*. No such degree of harm occurred in this case. In fact, there is no evidence of physical harm with the exception of a minor bruise on T.D.'s arm. The *only* empirical evidence of harm came from the testimony of the victim who said that the defendants' conduct made him "feel bad." Nothing more. While the conduct of these defendants represents incivility at best, their sentences are not individualized with respect to their age, background, and conduct.

The majority notes that the defendants were "in all other respects caring and nurturing people." It is very difficult to explain to "caring and nurturing people" how a five-year sentence makes any measurable contribution to acceptable penal

2

goals and is nothing more than a needless and purposely infliction of pain and suffering.

For the foregoing reasons, I respectfully dissent.

3